IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CONTINENTAL CASUALTY          §
COMPANY,                      §
                              §
                 Plaintiff,   §
                              §  Civil Action No. 3:04-CV-1866-D
VS.                           §
                              §
ST. PAUL FIRE & MARINE        §
INSURANCE COMPANY, et al.,    §
                              §
                 Defendants.  §

MEMORANDUM OPINION
AND ORDER

In this insurance litigation brought by two excess carriers
against a primary carrier seeking on various theories to recover
the proceeds they paid as a result of an adverse state-court
judgment against their insured, the court must decide whether the
primary carrier is entitled to summary judgment dismissing *Stowers*-
based[1] and related claims.  For the reasons that follow, the court
grants in part and denies in part the primary carrier's motion for
summary judgment.

I

This is a removed action by plaintiff Continental Casualty
Company ("Continental") and intervenor First Specialty Insurance
Corporation ("First Specialty"), two excess insurance carriers,
against defendant St. Paul Fire & Marine Insurance Company ("St.

_____

[1]*G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544
(Tex. Comm'n App. 1929, holding approved).

Paul"), a primary insurance carrier.[2]   Continental and First
Specialty allege that St. Paul negligently failed to settle within
its policy limits an underlying state-court lawsuit brought against
its insureds, USA Truck, Inc. ("USA Truck") and its driver, David
Wayne Elie ("Elie").

Bradley Dane Turpin ("Turpin"), a police officer, was injured
in a motor vehicle accident involving his motorcycle and a tractor-
trailer owned by St. Paul's insured, USA Truck, and operated by
Elie, USA Truck's employee.[3]   Turpin and his wife sued USA Truck
and Elie in Texas state court ("*Turpin* Litigation").   Following a
trial, the jury returned a verdict in favor of the Turpins in the
sum of approximately $16.5 million.

Before the jury returned its verdict, the Turpins made at
least three settlement demands on USA Truck.   The first was for
$1.675 million.   This offer was within USA Truck's $2 million
self-insured retention, but it was apparently rejected by USA
Truck, whose own settlement offer never exceeded $750,000

---

[2]St. Paul attempts to characterize itself as an "excess"
carrier by virtue of USA Truck's $2 million "self-insured
retention."   Concluding that this distinction is immaterial for
purposes of the court's analysis, it will, for purposes of
convenience, refer to Continental and First Specialty as "excess
carriers" and to St. Paul as the "primary carrier."

[3]The court recounts the evidence in a light favorable to
Continental and First Specialty as the summary judgment nonmovants
and draws all reasonable inferences in their favor.   *E.g., U.S.
Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2
(N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d
268, 270 (5th Cir. 2000)).

throughout the course of the litigation.

Anticipating a potential adverse judgment against its insured, St. Paul became involved in the case, engaged in discussions with the Turpins' counsel, retained local counsel to represent St. Paul, and otherwise participated in the litigation under the terms of the St. Paul policy.[4]  The Turpins increased their settlement demand to $3.5 million.  Neither St. Paul nor USA Truck accepted this demand. USA Truck elected not to increase its $750,000 offer.

Two weeks later, the jury returned a verdict in favor of the Turpins for approximately $16.5 million.  The verdict was satisfied by USA Truck's $2 million self-insured retention and by the benefits paid under USA Truck's primary and excess insurance policies.  St. Paul provided the first $5 million in auto and commercial general liability coverage, subject to the self-insured retention.  Continental and First Specialty provided the next $5 million in excess coverage.

Continental brought the instant equitable subrogation action against St. Paul in Texas state court to recover the benefits it paid and to obtain additional relief.  First Specialty intervened as a plaintiff, and the action was removed to this court based on

---

[4]The St. Paul policy granted St. Paul the "right to investigate and settle any claim or suit to the extent that [St. Paul] believe[s] is proper."  Continental App. 254.  The policy also granted St. Paul the "right to associate in the defense and control of any claim or suit that is reasonably likely to involve [them]."  *Id.*

diversity of citizenship.

Continental and First Specialty maintain that they are entitled to relief as equitable subrogees of USA Truck and Elie based on St. Paul's allegedly negligent failure to accept the Turpins' $3.5 million settlement demand. First Specialty also asserts claims for negligent handling of the defense and settlement negotiations.

St. Paul moves for summary judgment on Continental and First Specialty's claims and on its affirmative defense that a release agreement bars all claims.[5] St. Paul also appears to move for summary judgment on unpleaded affirmative defenses of waiver, estoppel, and failure of condition precedent.[6]

II

St. Paul's burden varies according to whether it is seeking summary judgment on Continental and First Specialty's claims or on

---

[5]In addition to its motion for summary judgment, St. Paul has filed three other motions that are currently pending: St. Paul's August 14, 2006 "Motion to Exclude/Motion to Limine the Opinions and Testimony of Plaintiff's and Intervenor's Expert Gary G. Beck"; its October 20, 2006 motion for leave to file its second amended answer; and its October 27, 2006 motion for leave to refile its appendix in support of its summary judgment replies. The court addresses St. Paul's motion to exclude *infra* at § VI. The court denies St. Paul's other two motions as moot. Even if the court considered the evidence in St. Paul's reply appendix, it would reach the same result. And the court is denying St. Paul's summary judgment motion on the merits, not on the ground that the defenses were not properly pleaded.

[6]The court addresses waiver at note 16 in § III(G), estoppel in § III(G), and failure of condition precedent in § III(A).

- 4 -

its affirmative defenses of release, waiver, estoppel, and failure of condition precedent.[7] Because St. Paul will not bear the burden of proof at trial on Continental and First Specialty's *Stowers*-based claims, St. Paul need only point the court to the absence of evidence of any one essential element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Continental and First Specialty must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The absence of evidence of an essential element mandates entry of summary judgment. *See Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).

Concerning the part of its summary judgment motion that is addressed to its affirmative defenses, because St. Paul will bear the burden of proof on these affirmative defenses at trial, it "must establish 'beyond peradventure all of the essential elements of the . . . defense[s].'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

---

[7]Continental and First Specialty contend that St. Paul waived the affirmative defenses of waiver, estoppel, and failure of condition precedent by failing to plead them. The court holds *infra* at § V(C) that these defenses are not waived.

St. Paul moves for summary judgment on Continental and First Specialty's *Stowers* claims for negligent failure to settle, contending they fail as a matter of law. It posits that First Specialty's other claims for negligent handling of the defense and settlement are not cognizable under Texas law.[8]

A

St. Paul contends that no duty to settle was ever triggered, because USA Truck did not tender its self-insured retention——a condition precedent to payment under the St. Paul policy——until the last day of trial, so it never had the opportunity to settle. St. Paul also posits that it never exercised control over the defense or settlement negotiations, and that the terms of the St. Paul policy did not require that it do so;[9] that there is no evidence that it ever refused to settle the case, or that the insured ever demanded that it settle; and the evidence shows that the insured instructed St. Paul not to settle.

Continental and First Specialty respond that St. Paul is liable under the *Stowers* doctrine for negligently refusing to accept the Turpins' $3.5 million settlement demand. They posit

_____

[8]St. Paul also argues for the second time that a valid release agreement between USA Truck and St. Paul bars all claims by Continental and First Specialty as equitable subrogees. The court addresses and rejects this contention *infra* at § IV(C).

[9]St. Paul appears to contend at one point that the policy prohibited it from assuming control of the defense.

that St. Paul's initial "negligent interjection" in the case and ultimate assumption of control over the defense and settlement negotiations gave rise to a duty to accept the Turpins' reasonable settlement demand within policy limits——a duty that St. Paul allegedly breached. Continental and First Specialty also contend that St. Paul's initial "negligent interjection" into the case virtually eliminated the possibility of a settlement within the insured's $2 million self-insured retention, thereby eliminating any incentive for the insured to settle. They appear to posit that once St. Paul entered the case, it had a duty to accept the $3.5 million offer——despite the apparently undisputed fact that the insured objected to settlement——because the insured's disincentive to settle only arose as a result of St. Paul's own negligence.[10]

B

Texas law recognizes that insurers owe an implied duty of ordinary care to their insured to accept reasonable settlement demands that are within policy limits. *See, e.g., Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994); *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved) (holding that insurer "is held to that degree of care and diligence which a man of ordinary care and

---

[10]Continental posits that "St. Paul made its presence——and the potential availability of its moneys over the $2 million threshold——known to the plaintiffs' attorneys months before trial." Continental Br. 3.

diligence would exercise in the management of his own business."). This doctrine is commonly referred to as the *Stowers* doctrine, and it is limited in scope. The Fifth Circuit, interpreting Texas law, has noted that "[t]he raison d'etre for the *Stowers* doctrine is that the insurer, when in control of the litigation, might refuse a settlement offer that its client, the insured, would want to accept if it had that option." *Foremost County Mut. Ins. Co. v. Home Indem. Co.*, 897 F.2d 754, 758 n.5 (5th Cir. 1990). Moreover, although the *Stowers* doctrine imposes a duty of ordinary care on an insurer who assumes control of the defense and settlement of a case, it does not "impose any duty on an insurer . . . to make or solicit settlement proposals." *Garcia*, 876 S.W.2d at 849-51 (discussing *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656 (Tex. 1987)). Rather, a *Stowers* plaintiff must plead and prove that the claim against the insured is within the scope of coverage, that the settlement demand is within policy limits, and that the terms of the settlement demand are such that an ordinarily prudent insurer would accept the demand, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Id.* at 849. Implicit in the foregoing elements is the principle that an insurer cannot be liable unless it assumes control over settlement negotiations and is "presented with a reasonable opportunity to prevent the excess judgement by settling within . . . policy limits." *Id.; see Stowers*, 15 S.W.2d at 548 (holding

insurer to reasonable care standard in exercising its *exclusive control* over settlement negotiations); *see also Ranger County Mut. Ins. Co.*, 723 S.W.2d at 659 ("We held in *Stowers* that an insurer which, under the terms of its policy, *assumes control* of a claim . . . is held to that degree of care and diligence which an ordinary prudent person would exercise in the management of his own business."). The absence of a duty to defend does not vitiate a *Stowers* claim. *See Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 263-64 (Tex. 2002) (holding that insurer's assumption of exclusive control over settlement negotiations triggered *Stowers* duty absent duty to defend). And at least one Texas court has held that the *Stowers* duty exists even absent a demand by the insured that the insurer accept the offer. *See Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches*, 215 S.W.2d 904, 929 (Tex. Civ. App. 1948, writ ref'd n.r.e) ("It was not a defense to Insurer that Insured did not demand acceptance of [the settlement offers]. Insurer must perform the duty imposed upon it without being activated by Insured.")

The *Stowers* duty arises only between the insurer and the insured, and Texas courts have never recognized the existence of a direct *Stowers* duty between insurance carriers. Texas law, however, permits an excess carrier to bring an equitable subrogation action under *Stowers* against a primary carrier. *See Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 482-83

(Tex. 1992) (citations omitted). Texas courts have reasoned that primary carriers should not be relieved of the duty of care owed to the insured simply because the insured has separately contracted for excess coverage and has little incentive to sue the primary carrier.[11]  *See id.* (citing *Peter v. Travelers Ins. Co.*, 375 F. Supp. 1347, 1350 (C.D. Cal. 1974), and *Commercial Union Ins. Co. v. Med. Protective Co.*, 393 N.W.2d 479, 483 (Mich. 1986)).  Thus in an equitable subrogation action under *Stowers* brought by an excess carrier against a primary carrier, the excess carrier is said to "'stand[ ] in the shoes' of its insured with regard to any cause of action its insured may have against a primary insurer responsible for the loss." *Mt. Hawley Ins. Co. v. Lexington Ins. Co.*, 2003 WL 21467230, at *5-*6 (N.D. Tex. June 23, 2003) (Fish, C.J.) (citing *Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 949 (5th Cir. 1999)).  Accordingly, "before an excess insurer can recover from a primary insurer under the doctrine of equitable subrogation, the excess insurer must first prove that the primary insurer failed to fulfill a duty owed to the insured."  *Id.*

---

[11]The *Canal* court also noted that a primary carrier would have less incentive to settle reasonably if it were not liable to the excess carrier in equitable subrogation, and that wrongful failure to settle would likely result in increased excess coverage premiums.  *See Canal Ins. Co.*, 843 S.W.2d at 483.

C

With these principles in mind, the court turns to St. Paul's motion for summary judgment on Continental and First Specialty's *Stowers*-based claims. In the instant case, resolving the question whether a legal duty arose under the *Stowers* doctrine turns on whether a reasonable jury could find that St. Paul assumed control over the settlement discussions and was "presented with a reasonable opportunity to prevent the excess judgment by settling within . . . policy limits." *Garcia*, 876 S.W.2d at 849. This is because, as noted, under Texas law

> the *Stowers* duty arises only when an insurer *undertakes a defense*, because in that circumstance, the insurer assumes the responsibility to act as the exclusive and absolute agent of the insured in all matters pertaining to the questions of litigation, and, thus, must act as an ordinarily prudent person. It is this right to make strategic decisions that imposes extra-contractual duties on a defending carrier.

*Wilcox v. Am. Home Assur. Co.*, 900 F. Supp. 850, 858 (S.D. Tex. 1995) (emphasis added) (citations omitted). Mere participation in the defense of the case is not enough. Unless the evidence shows that St. Paul undertook a defense of the insured and assumed responsibility to act as its exclusive agent, St. Paul cannot be liable under *Stowers*. Because Continental and First Specialty do not argue that the St. Paul policy terms gave complete and exclusive control over the defense and settlement of the *Turpin* Litigation, the court must consider whether Continental and First

- 11 -

Specialty have adduced evidence of St. Paul's actual involvement in the case that would be sufficient for a reasonable jury to find that St. Paul assumed control.

Viewed favorably to Continental and First Specialty, the evidence they have adduced would enable a reasonable jury to find that St. Paul assumed control of the defense and therefore had a duty under *Stowers* to accept the Turpins' $3.5 million settlement demand. The evidence suggests that St. Paul hired local counsel, Kent Adams, Esquire ("Adams"), to represent St. Paul and to evaluate the suit. Adams at one point contacted the Turpins regarding settlement negotiations. He also submitted a written evaluation of the case to USA Truck, who asserts that the evaluation omitted material information. St. Paul advised USA Truck that it could reasonably anticipate a verdict within the range of $3 to $7 million. St. Paul also apparently asked USA Truck to permit Adams to represent it, USA Truck agreed, and, shortly before trial, Adams filed a notice of appearance as additional counsel for USA Truck. Adams was responsible for conducting voir dire, examining and cross-examining witnesses, and presenting closing argument, and he was lead counsel by the conclusion of the trial. At one point, St. Paul offered to contribute to a settlement, and it later attempted to force a

settlement by threatening to take over.[12]  St. Paul continued to assert control over Adams, at one point asking him to investigate whether USA Truck had intentionally prejudiced St. Paul's position and later by sending him an email concerning closing arguments in the case.  On May 26, 2004, during trial, the Turpins made a written $3.5 million settlement demand that St. Paul did not accept.  Considered *in toto*, this evidence is sufficient to permit a reasonable jury to find that, before the Turpins made the settlement demand, St. Paul undertook to defend the insured, assumed control of the *Turpin* Litigation, and thereby assumed a duty under *Stowers*.[13]

D

Relying on *National Union Fire Insurance Co. v. CNA Insurance Cos.*, 28 F.3d 29, 33 (5th Cir. 1994), St. Paul maintains that it cannot be liable under *Stowers* because, as an "excess" carrier, it was not capable of accepting the $3.5 million settlement demand before USA Truck tendered the limits of its self-insured retention,

---

[12]Continental characterizes these threats as "self-serving" attempts to cover up the fact that St. Paul had taken on a *Stowers* duty.  Continental appears to posit (but without adequate explanation) that these threats actually reflect "additional control" by St. Paul over the defense.

[13]In so holding, the court need not rely on the testimony of Gary Beck, whose testimony is the subject of St. Paul's pending motion to exclude, which the court addresses *infra* at § VI.

which it failed to do until June 9, 2004, the last day of trial.[14]
St. Paul appears to posit that its payment obligation under the
policy could not have arisen before USA Truck tendered its $2
million self-insured retention.[15]

St. Paul's reliance on *National Union Fire Insurance Co.* is
misplaced.  The terms of the policy at issue in that case
unambiguously reserved control of the defense to the primary
carrier.  The court held that the evidence adduced by the summary
judgment nonmovant at most suggested that the insurer had
participated in settlement negotiations, and that such
participation was alone insufficient to constitute assumption of
the defense.  *Nat'l Union Fire Ins. Co.*, 28 F.3d at 33 (noting that
insurer's participation in settlement negotiations does not itself
constitute assumption of insured's defense) (citing *Arkwright-
Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442,
445-46 (5th Cir. 1991)).  In the present case, St. Paul has not
shown that the policy terms unambiguously reserved control of the
defense to USA Truck, or that St. Paul's conduct only amounted to
participation in settlement negotiations rather than control.

---

[14]As noted, *see supra* note 2, St. Paul characterizes USA Truck
as the "primary" carrier because of the $2 million self-insured
retention.

[15]Failure of a condition precedent is an affirmative defense
on which St. Paul will bear the burden of proof at trial.  *E.g.,
Tex. Dep't of Hous. & Cmty. Affairs v. Verex Assur., Inc.*, 68 F.3d
922, 928 (5th Cir. 1995).

Morever, as the court has already noted, the absence of a duty to defend the insured is not dispositive. The relevant inquiry under *Stowers* is whether St. Paul assumed control of the litigation and settlement negotiations. *See Rocor Int'l, Inc.*, 77 S.W.3d at 263-64. Accordingly, the court concludes that there is a genuine fact issue that precludes summary judgment on this ground.

E

St. Paul also appears to posit that it was precluded under the terms of the policy from settling the case against USA Truck's desire. It argues that the terms of auto liability portion of the policy, unlike the commercial general liability portion, do not give St. Paul the right to settle a case and then recover the self-insured retention from USA Truck. In other words, St. Paul maintains that because the auto liability endorsement did not expressly give it the right to recover the self-insured retention from USA Truck, it did not afford St. Paul the right to settle the case. The court disagrees.

The plain terms of the auto liability endorsement provide that "[St. Paul will] have the right to investigate and settle any claim or suit to the extent that we believe is proper," and that St. Paul will "have the right to settle any claim or suit within the available limits of coverage." D. App. 103. St. Paul's alleged inability to recover the self-insured retention from USA Truck under the terms of the policy, even if true, does not support

interpreting the policy in a way that vitiates a provision that grants St. Paul the right to settle claims. Thus St. Paul has not established that it was contractually precluded from accepting the Turpins' $3.5 million settlement demand.

F

St. Paul also contends that it could not have refused to settle the case because its insured never demanded or requested that it settle. Although it appears to be undisputed that USA Truck never demanded that St. Paul settle the *Turpin* Litigation, the *Stowers* duty exists even absent a demand by the insured that the insurer accept the offer. Moreover, the court rejects St. Paul's argument insofar as it is premised on the notion that the *Stowers* doctine requires an affirmative act of refusal on the part of the insurer. Presuming all the other elements are satisfied, *Stowers* only requires a negligent failure to accept a reasonable settlement demand within policy limits. The court accordingly rejects St. Paul's contention that USA Truck's failure to demand that it settle the case somehow forecloses Continental and First Specialty's subrogated *Stowers* action.

G

St. Paul maintains that Continental and First Specialty are estopped from bringing an equitable subrogation claim under *Stowers* because USA Truck made clear to St. Paul that it was committed to defending the suit, would not tender its self-insured retention,

and even threatened St. Paul with allegations of bad faith if it were to negotiate a settlement over USA Truck's objections.[16] Because estoppel is an affirmative defense, *e.g., FDIC v. Niblo*, 821 F. Supp. 441, 451-52 (N.D. Tex. 1993) (Cummings, J.), St. Paul must establish the elements of that defense "beyond peradventure." This it has not done.

St. Paul posits that these actions by USA Truck vitiate any duty to settle, and amount to conduct binding on Continental and First Specialty as USA Truck's equitable subrogees. The court disagrees. St. Paul fails to cite any authority to support the proposition that principles of estoppel preclude an excess carrier from bringing a *Stowers* action where the insured did not wish to settle, and this court has not located such authority on its own.

The court's own research, however, has located expressions of skepticism by the Fifth Circuit that an insured's failure to demand acceptance of a settlement offer and desire to try a case to verdict is a recognized defense to a *Stowers* action. *See Am. Ins. Corp. v. Assicurazioni Generali SpA*, 228 F.3d 409, 2000 WL 1056143, at *9-*10 (5th Cir. 2000) (unpublished table decision) (characterizing this as type of consent defense that the proponent

---

[16]St. Paul also argues that a purported waiver by USA Truck of claims against St. Paul is binding on Continental and First Speciality as equitable subrogees. But St. Paul has failed to establish the elements of this affirmative defense. *See, e.g., FDIC v. Niblo*, 821 F. Supp. 441, 451-52 (N.D. Tex. 1993) (Cummings, J.).

bears the burden of establishing).[17]  The Fifth Circuit concluded not only that the proponent of the defense failed to cite any authority for the existence of a consent defense, but that the panel's independent research had failed to uncover any case recognizing consent as a defense under Texas law to a *Stowers* claim.  *Id*.  The Fifth Circuit went on to conclude that even assuming such a defense existed, the proponent had not established it as a matter of law.  Conducting a similar analysis in the instant case, the court concludes that assuming *arguendo* that the insured's desire not to settle can be a defense to a *Stowers* claim, St. Paul has failed to establish that defense as a matter of law.

For the foregoing reasons, the court denies St. Paul's motion for summary judgment on Continental and First Specialty's equitably subrogated *Stowers*-based claims.

H

Continental appears to rely solely on the *Stowers* doctrine to assert subrogated claims on the basis of allegations that St. Paul negligently failed to accept the Turpins' $3.5 million settlement demand.  First Specialty, however, asserts in its summary judgment response separate and more general allegations that St. Paul is liable for negligently handling the defense and settlement negotiations, as well as for breach of duty under *Stowers*.  St.

_____

[17]In other words, "consent" by the insured to the insurer's failure to accept a settlement demand.

Paul argues that any non-*Stowers*-based claims asserted by an excess carrier against a primary carrier on the basis of equitable subrogation are not cognizable under Texas law.

Texas law does not recognize an equitable subrogation action by excess carriers against a primary carrier for negligent handling of the defense or settlement negotiations. The only tort duty recognized under Texas law in this context is the *Stowers* duty to accept reasonable settlement demands that are within policy limits. First Specialty's reliance on more expansive language from *Ranger County Mutual Insurance Co.* and *Rocor International, Inc.* suggesting that Texas law recognizes a broader tort duty in this context is misplaced. *Ranger County Mut. Ins. Co.*, 723 S.W.2d at 659 (suggesting in dicta that *Stowers* duty extends to "the full range of the agency relationship," including "investigation, preparation of the defense of the lawsuit, trial of the case, and reasonable attempts to settle."). The Texas Supreme Court has clearly held that Texas law recognizes only one tort duty in this context, and that is the *Stowers* duty to accept reasonable settlement demands within policy limits. *See Md. Ins. Co. v. Head Indus. Coatings & Servs., Inc.*, 938 S.W.2d 27, 28 (Tex. 1996) (per curiam).

Accordingly, the court grants St. Paul's summary judgment motion to the extent it seeks dismissal of First Specialty's claims that exceed those brought under *Stowers*.

IV

The court turns next to the question whether St. Paul has established beyond peradventure that it is entitled to dismissal of this lawsuit based on the affirmative defense of release. To prevail, St. Paul must demonstrate without genuine and material factual dispute, and as a matter of law, that the release precludes Continental and First Specialty's claims against St. Paul.

A

In its first summary judgment motion, St. Paul maintained that USA Truck, individually and on behalf of its employee, fully settled and released all controversies arising out of and related to the underlying suit, and that the settlement and release between USA Truck and St. Paul precluded Continental and First Specialty from recovering against St. Paul on claims premised on equitable subrogation. The court denied the motion. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *3 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) ("*Continental I*"). In its first summary judgment motion, St. Paul argued that the release was binding on the grounds that it was executed on August 26, 2004 at 12:08 p.m., before USA Truck attempted to revoke it at 2:13 p.m. the same day. *Id.* at *2. The court held, however, that there was, at a minimum, a genuine issue of material fact whether USA Truck's written instructions for acceptance of the release were contained not only in the release itself but also in a facsimile that W. Todd Barnett,

Esquire ("Barnett"), USA Truck's counsel, sent to Christopher W.
Martin, Esquire ("Martin"), St. Paul's counsel. *Id*.[18] The court
reasoned that St. Paul had failed to establish as a matter of law
that the instructions contained in the facsimile were not part of
the offer. And it concluded that there was a genuine issue of
material fact whether they were. *Id*.

B

In the present summary judgment motion, St. Paul addresses the
fact issue identified in *Continental I*. It posits that the release
is valid because the "undisputed evidence" shows that the facsimile
was nothing more than a transmittal page and that it was not part
of the release. In support of this contention, St. Paul cites the
deposition testimony of Barnett and Eric McConnell, USA Truck's
Risk Management Manager and a signatory to the release, and the
terms of the release. St. Paul argues that the release was valid
upon execution by the parties, that "execution" was accomplished by
signatures only, and that execution occurred before USA Truck
attempted to revoke it. St. Paul appears to contend that because
it has addressed the "singular fact issue" that the court

_____

[18]In the facsimile, sent on August 25, 2004 at 6:17 p.m.,
Barnett included the following: "[p]lease send me St. Paul's
execution page in the morning," and "[p]lease hold USA Truck's
execution page in trust until St. Paul has delivered its fully
executed signature page to my offices." *Continental I*, 2006 WL
984690, at *2 (citing D. App. 307, 423). Additionally, the release
provides that "[t]his Settlement Agreement shall become effective
following execution by USA TRUCK and ST. PAUL." *Id*. (citing D.
App. 424).

identified in *Continental I*, it is entitled to summary judgment based on the affirmative defense of release.

St. Paul also argues that the purportedly validly-formed release bars all claims in this case. It contends that the subrogated claims that Continental and First Specialty are asserting are barred because Continental and First Specialty "stand in the shoes" of USA Truck, who is bound by the release. St. Paul maintains that because Continental and First Specialty's claims are "purely derivative," St. Paul may assert all defenses against them that it could assert against USA Truck, including the affirmative defense of release. It then posits that the terms of the release bar all claims by Continental and First Specialty as the equitable subrogees of USA Truck and Elie against St. Paul. St. Paul relies on *Keck Mahin v. National Union Fire Insurance Co.*, 20 S.W.3d 692 (Tex. 2000), and *Healthsouth Corp. v. Gulf Underwriters Ins. Co*, C.A. No. 4:01-CV-793-Y (N.D. Tex. July 8, 2004) (Means, J.)——cases in which it was determined that a valid release between the primary insurer and the insured barred subsequent equitable subrogation claims by excess insurers.

Continental and First Specialty respond, *inter alia*, that the evidence on which St. Paul relies to support its second summary judgment motion is irrelevant to its affirmative defense of release. They maintain that the subjective beliefs of USA Truck and its counsel regarding the facsimile are immaterial under Texas

law, and they are, in any event, of negligible probative value.
Continental contends that any testimony concerning the purpose or
effect of the facsimile is excluded by the best evidence rule.  It
also argues that St. Paul's reliance on the express terms of the
release is misplaced because it is the validity of the release that
is at issue, and this evidence is cumulative of proof already
presented to the court; that there has not been any performance
under the agreement; that the cited portion of the Barnett
deposition is irrelevant because, when taken in context, the
testimony is vague and does not make offer or acceptance any more
or less likely; and that there is a genuine issue of material fact
whether the purported release was accepted, because USA Truck
communicated its revocation of the offer before St. Paul
communicated its acceptance thereof to USA Truck.

First Specialty also maintains that there was no communication
of St. Paul's assent to USA Truck prior to USA Truck's revocation;
and that the purported release, even if valid, does not defeat
First Specialty's equitable subrogation claims on behalf of USA
Truck and Elie, because an insured's release of a third party has
no effect on the subrogated insurer's claim against the third party
if the third party had actual notice of the insurer's subrogation
claim prior to the release.  First Speciality further contends that
St. Paul had knowledge of First Specialty's equitable subrogation
claim on behalf of USA Truck and that the claim matured before the

purported release was signed; that the "actual payment" rule that
St. Paul advances is inconsistent with the purposes of equitable
subrogation; and that the purported release does not affect First
Specialty's subrogated claims on behalf of Elie, because he was not
a party to the purported release.

C

"Under Texas law, release is an affirmative defense on which
St. Paul will have the burden of proof at trial." *Continental I*,
2006 WL 984690, at *1 (citing *MG Bldg. Materials, Ltd. v. Moses
Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 64 (Tex. App. 2005, pet.
denied)). "A release, valid on its face, is a complete bar to any
later action based upon matters covered in the release" unless the
release is set aside." *Westfield Dev., Inc. v. Rubashkin*, 2007 WL
491115, at *2 (Tex. App. Feb. 15, 2007, no pet. h.) (not designated
for publication) (internal quotation marks omitted) (quoting
*Winkins v. Frank Winther Invs., Inc.*, 881 S.W.2d 557, 559 (Tex.
App. 1994, no writ)). "[I]n order to establish [its] affirmative
defense of release, the [defendant] must prove the elements of a
contract." *Id.* (internal quotation marks omitted) (quoting *Vera v.
North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App. 1998, no
pet.)). "When the party who will have the burden of proof at trial
concerning an affirmative defense seeks summary judgment on the
basis of that defense, it must establish beyond peradventure all of
the essential elements of the . . . defense." *Continental I*, 2006

WL 984690, at *1 (internal quotation marks omitted) (quoting *Bank One, Tex., N.A.*, 878 F. Supp. at 962).

St. Paul has failed to meet this burden. In *Continental I* the court held only that St. Paul had failed to meet its burden because there was "at a minimum" a genuine issue of material fact whether a valid release agreement was ever formed. *Id.* at *2 ("In this case, there is *at a minimum* a genuine issue of material fact whether USA Truck's written instructions for acceptance were contained not only in the release itself but also in the facsimile that Barnett sent to Martin." (emphasis added)). The court did *not* hold that St. Paul had established its affirmative defense as to all elements except the validity of the formation of the release (as St. Paul appears to assume). *See id.* As noted, "in order to establish [its] affirmative defense of release, the [defendant] must prove the elements of a contract." *Rubashkin*, 2007 WL 491115, at *2 (quoting *Vera*, 989 S.W.2d at 17). St. Paul has not met this burden. Instead, regarding the elements of the purported contract, St. Paul has focused its argument almost entirely on whether the parties subjectively intended that the facsimile that Barnett sent to Martin formed part of the terms of the agreement.[19] Accordingly, even if the court were to accept St. Paul's argument, it would be insufficient under "the heavy 'beyond peradventure' standard to

---

[19]Notably, St. Paul does not attempt to incorporate by reference any previous arguments relating to the release that it proffered in its first summary judgment motion.

obtain summary judgment on an affirmative defense as to which it
will have the burden of proof at trial." *Continental I*, 2006 WL
984690, at *2.

V

St. Paul moves for leave to file a second amended answer. It
seeks to assert the affirmative defenses of estoppel, waiver, and
failure of condition precedent.

A

The court denies the motion as moot because it has denied St.
Paul's summary judgment motion on the merits, not on the ground
that St. Paul failed to plead these affirmative defenses.

B

Because the issue could arise at trial or in formulating the
pretrial order, however, the court will address whether St. Paul
has waived these affirmative defenses by failing to plead them.
St. Paul argues that pursuant to Fed. R. Civ. P. 15(a), its request
for leave should be granted because there is no undue delay or
prejudice to plaintiff or intervenor, and that abatement of
discovery prevented St. Paul from asserting these defenses earlier.
Continental and First Specialty respond that leave to amend should
be denied because, after a scheduling order deadline for amending
pleadings has passed, the moving party must show "good cause" under
Rule 16(b) before Rule 15(a) comes into play, and that St. Paul
cannot meet the "good cause" standard of Rule 16(b).

- 26 -

C

The Fifth Circuit has explicitly recognized that

> [a]lthough failure to raise an affirmative
> defense under rule 8(c) in a party's first
> responsive pleading "generally results in a
> waiver . . ., [w]here the matter is raised in
> the trial court in a manner that does not
> result in unfair surprise . . . technical
> failure to comply precisely with Rule 8(c) is
> not fatal."

*Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 (5th Cir. 2001) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)); *e.g., Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004). "Thus, a defendant does not waive an affirmative defense if he 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'" *Giles*, 245 F.3d at 491 (brackets in original) (quoting *Allied Chem. Corp.*, 695 F.2d at 856). Accordingly, St. Paul need not have obtained leave to amend under Rule 15(a), provided that it raised the defenses in this court at a pragmatically sufficient time and there is no resulting unfair surprise or prejudice to Continental's and First Specialty's ability to respond. *See id.; Swicegood ex rel. Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *9 n.16 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.).

St. Paul raised its affirmative defenses of waiver, estoppel, and failure of condition precedent in its motion for summary judgment. Continental and First Specialty did not move under Rule 56(f) to obtain additional discovery so that they could respond to

St. Paul's motion, and they have not adequately demonstrated that they were prejudiced in their ability to respond to these defenses or that they were unfairly surprised by them.

Continental and First Specialty argue that they would be prejudiced because they have already conducted extensive discovery in the absence of notice that St. Paul will rely on these affirmative defenses. This argument is undermined, however, by the absence of any showing that Continental and First Specialty require significant additional discovery to fully and fairly respond to St. Paul's affirmative defenses. Accordingly, the court holds that these defenses are available to St. Paul at trial and can be included in the pretrial order.

VI

St. Paul moves to exclude or moves *in limine* to prevent Continental and First Specialty from introducing certain opinions and testimony of Gary G. Beck, whom they intend to call as an expert witness. The court denies the motion to exclude without prejudice, and it defers a ruling on the motion *in limine* until the pretrial conference. After considering the motion, the court has determined that it is better considered in the context of a pretrial (or trial) ruling rather than in the present vacuous setting.

*     *     *

For the foregoing reasons, St. Paul's August 14, 2006 motion for summary judgment is granted in part and denied in part. St. Paul's August 14, 2006 motion to exclude/motion *in limine* is denied without prejudice to the extent St. Paul seeks to exclude Beck's opinions and testimony, and the court defers a ruling on the motion *in limine* until the pretrial conference. The clerk of court is directed to close the motion *in limine* for statistical purposes, in accordance with the usual procedure. St. Paul's October 20, 2006 motion for leave to file its second amended answer, and its October 27, 2006 motion for leave to refile its appendix in support of its summary judgment replies, are denied as moot.

**SO ORDERED.**

August 23, 2007.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE